1

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                      AT TACOMA

10

11    CRAIG D. HANSON,                    CASE NO. 13-5388 RJB

                 Plaintiff,               ORDER ON THE PARTIES'
12                                        MOTIONS FOR PARTIAL
          v.                              SUMMARY JUDGMENT
13
      COUNTY OF KITSAP, WASHINGTON,
14    DAVID LYNAM, KITSAP COUNTY
      FIRE MARSHAL, JOHN AND JANE
15    DOE, EMPLOYEE-AGENTS AND
      FORMER EMPLOYEE AGENTS OF
16    KITSAP COUNTY,

17               Defendants.

18
          This matter comes before the Court on the Plaintiff's Motion and Memorandum for
19
      Partial Summary Judgment Regarding Public Records Act and Defamation (Dkt. 126) and
20
      Defendants' Cross Motion for Partial Summary Judgment Regarding Claims for Public Records
21
      Act and Defamation (Dkt. 137).  The Court has considered the pleadings filed regarding the
22
      motions and the remaining file.
23

24

1    Plaintiff, a veteran of the United States military, filed this employment case pursuant to

2    Uniformed Services Employment and Reemployment Rights Act ("USERRA") 38 U.S.C. §

3    4301, *et seq*. and state law on May 22, 2013.  Dkt. 1.  In his second Amended Complaint,

4    Plaintiff made USERRA based claims for discrimination in employment based on his military

5    service under 38 U.S.C. § 4311, for retaliation under § 4311, failure to reemploy to the proper

6    reemployment position under §§ 4312 and 4313; failure to provide proper benefits under § 4316;

7    discharge without cause under § 4316; and for failure to properly pay employee pension and

8    other benefits under §4318.  Dkt. 45.  Plaintiff also made state law claims for violations of the

9    Washington Law Against Discrimination ("WLAD"), the Public Records Act ("PRA"),

10   defamation, and liquidated damages.  *Id.*  He seeks damages, attorneys' fees and costs.  *Id.*

11              **I.      FACTS AND PROCEDURAL HISTORY**

12       The pending motions for partial summary judgment are two of the parties' many motions for

13   partial summary judgment.  Plaintiff's first partial motion for summary judgment was denied on

14   October 10, 2013.  Dkt. 37.

15       On May 22, 2014, the undersigned issued a 38 page order, granting, in part, and denying, in

16   part, the Defendants' two partial motions for summary judgment and Plaintiffs' two cross

17   motions for partial summary judgment.  Dkt. 136.  That order granted Defendants' motion for

18   summary dismissal of Plaintiff's USERRA claims under §§4312 and 4313 (reemployment) and §

19   4316 (benefits), and his claims for hostile work environment and constructive discharge, and all

20   those claims were dismissed.  *Id.*  Plaintiff's motion for summary judgment on his USERRA

21   claim under § 4318 (pension) was granted.  *Id.*  Defendants' motion for summary dismissal of

22   Plaintiff's USERRA claim for § 4311 (discrimination) and claims under WLAD for

23   discrimination were denied only to the extent that the claims were based on the failure to

24

promote him and his removal from the fire investigation rotation. *Id*. Defendants' motion and Plaintiff's cross motion on the USERRA claim under § 4316 (without cause discharge) were both denied. *Id*. Plaintiff's claims for a PRA violation and for defamation were not raised in those motions.

The facts and other procedural history of this case are contained in the May 22, 2014 order (Dkt. 136, at 1-16), and are adopted here by reference. Following are facts not in that order and relate to Plaintiff's claim under the PRA.

On March 13, 2013, Kitsap County received a PRA request from Ryan Best which provided:

> Request No. 3: Each document that shows the duties, responsibilities, qualifications, for Deputy Fire Marshal I, II, and III positions from January 1, 2005 to the present day. This request includes, but is not limited to, documents relating to proposed (but never enacted) changes in the duties, responsibilities, and/or qualifications of the Deputy Fire marshal I, II, and III positions as well as documents that show (a) who occupied those positions (b) when said individuals occupied those positions and (c) the qualifications of the individuals who occupied those positions.

Dkts. 127, at 4 and 7; 138, at 4. In response, Kitsap County submitted records and an exemption log. *Id*. There was no reference to Plaintiff in either Mr. Best's PRA request or any of the other correspondence between Kitsap County and Mr. Best.

Now pending is Plaintiff's motion for partial summary judgment on his PRA and defamation claims. Dkt. 126. Defendants timely responded and within the response, filed a cross motion for partial summary judgment on the same claims. Dkt. 137. Plaintiff filed a reply (Dkt. 141) and a response to Defendants' cross motion (Dkt. 146), and Defendants filed a reply (Dkt. 150) to the response to their cross motion. The motions are now fully briefed and ripe for decision.

The case is set to begin trial on August 18, 2014. Dkt. 30.

1        II.        **DISCUSSION**

2     **A.  SUMMARY JUDGMENT STANDARD**

3          Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

4     file, and any affidavits show that there is no genuine issue as to any material fact and that the

5     movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is

6     entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

7     showing on an essential element of a claim in the case on which the nonmoving party has the

8     burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

9     of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

10    for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

11    (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

12    metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

13    material fact exists if there is sufficient evidence supporting the claimed factual dispute,

14    requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

15    *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

16    *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

17          The determination of the existence of a material fact is often a close question.  The court

18    must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

19    e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

20    *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

21    of the nonmoving party only when the facts specifically attested by that party contradict facts

22    specifically attested by the moving party.  The nonmoving party may not merely state that it will

23    discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

24

1   to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

2   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

3   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

4   **B.  PRA CLAIM**

5       Plaintiff moves for summary judgment on his PRA claim arguing that the county did not

6   comply with the PRA exemption requirements.  Dkt. 126.  Defendants move for summary

7   dismissal of the claim arguing that the Plaintiff has not shown that he has standing to assert a

8   PRA claim because he has not shown that Mr. Best was representing him when he made the

9   request, and in any event, the county's explanation satisfied the statutory requirements.  Dkt.

10  137.

11      Under Washington's PRA, "an agency withholding or redacting any record must specify the

12  exemption and give a brief explanation of how the exemption applies to the document."  *Sanders*

13  *v. State,* 169 Wn.2d 827, 846 (2010)(*citing* RCW 42.56.210(3)).  "A statement that is limited to

14  identifying the information that is withheld and baldly citing a statutory exemption violates the

15  brief explanation requirement."  *City of Lakewood v. Koenig,* 176 Wn.App. 397 (2013)(holding

16  City's merely identifying the information withheld and citing the statute it believed exempted the

17  information violated the brief explanation requirement); 179 Wn.2d 1022, (2014)( *review*

18  *accepted*).

19       Even assuming that Plaintiff has standing to assert a claim, and the Court makes no such

20  finding, the Defendants' motion should be granted and the claim summarily dismissed.  The

21  exemption log identified responsive documents to Request No. 3 subsection (c) as "[a]pplication

22  and supplemental documents of employees hired into Deputy Fire Marshal I, II, and II [sic]

23  positions."  Dkt 127, at 9.  In explanation, the log noted that: "RCW 42.56.250(2) exempts all

24

applications for public employment.  RCW 42.56.250(1), (2) exempts all pre-employment testing

and application materials."  Dkt. 127, at 9.  The exemption log provided as to Request No. 3

subsection (c):  "RCW 42.56.250(2) exempts all applications for public employment.  RCW

42.56.250(1), (2) exempts all pre-employment testing and application materials."  Dkt. 127, at 9.

Kitsap County identified the responsive documents and gave an adequate response.  Plaintiff's

PRA claim should be dismissed.

**C.  DEFAMATION CLAIM**

Plaintiff moves for summary judgment on his defamation claim.  Dkt. 126.  He argues that he

was defamed when his supervisor, Dave Lynam, left a summary of interview notes on a credenza

in the office and the notes were found by a co-worker.  *Id.*  Defendants oppose the motion and

move to summarily dismiss this claim.  Dkt. 137.  The facts regarding this claim are in the May

22, 2014 Order.  Dkt. 136.  It provided, in relevant part:

> A panel compiled by Mr. Lynam interviewed [Plaintiff and Jackie
> Blackwood] for [a newly created Deputy Fire Marshal II ("DFM 2")] position.
> Dkt. 103-1, at 72.  The panel was composed of Warner Webb, the Pierce County
> Fire Marshal, Jeffrey Rowe, Deputy Director of Kitsap County's Department of
> Community Development, Wayne Senter, Executive Director of the Washington
> Fire Chief's Association, and Jonathan Dunaway, the Clark County Fire Marshal.
> Dkts. 110, 111, 112, 115.
>
> Both candidates were asked essentially the same questions and follow-up
> questions. Dkts. 110, at 4-5 and 111, at 4.  They were asked about their prior
> work experience and customer service skills.  *Id.*
>
> In Mr. Webb's view, Ms. Blackwood was better about giving specific
> examples of past work history and had better customer service skills.  Dkt. 110, at
> 5.  Mr. Webb noted that Plaintiff gave inconsistent answers regarding work
> history, including stating that he had never shut a business down and then later
> acknowledging that he had.  Dkt. 110, at 5.  When questioned, Plaintiff was
> unable to explain his inconsistent answers.  Dkt. 110, at 5.  Mr. Webb stated that
> although Plaintiff discussed his military experience, it did not appear directly
> related to the job duties expected of a DFM 2.  Dkt. 110, at 5.  Mr. Webb stated
> that he did not view Plaintiff's military service in a negative light.  *Id.*
>
> Mr. Rowe stated that he gave Plaintiff a score of 20 and Ms. Blackwood a
> score of 29.  Dkt. 111, at 4.  Mr. Rowe did not view Plaintiff's prior military
> experience negatively.  Dkt. 111, at 4.  In Mr. Rowe's opinion, Plaintiff appeared

"overly confident and arrogant" and appeared to lack "integrity and credibility." Dkt. 111, at 5. Mr. Rowe was very concerned about Plaintiff's lack of credibility because he was aware that DFM 2s sometimes end up in court, and need to be good witnesses. Dkt. 111, at 5-6. Mr. Rowe was also concerned about Plaintiff's description of his leadership style as leading by establishing a "common enemy." Dkt. 111, at 6. This style is the opposite of the collaborative leadership style which is the preferred style in the department. Dkt. 111, at 6. Mr. Rowe indicated in his notes that Plaintiff "seems very military centric," reflecting Mr. Rowe's observation about the leadership style Plaintiff described. Dkt. 111, at 6. Mr. Rowe stated that Plaintiff's military service "had no bearing on how [he] scored Plaintiff." Dkt. 111, at 6-7. He felt that Ms. Blackwood's weaknesses could be overcome by training, and that Plaintiff's lack of credibility and integrity could not. Dkt. 111, at 7.

Mr. Senter, also a military veteran, stated that he was surprised at Plaintiff's "cavalier demeanor" during the job interview, and even more surprised that Plaintiff described himself as an "overbearing, arrogant jerk." Dkt. 112, at 5. Plaintiff appeared to have poor interpersonal skills. Dkt. 112, at 7. Like Mr. Rowe, Mr. Senter was concerned with Plaintiff's description of his leadership style as creating a "common enemy" because it suggested to Mr. Senter that Plaintiff might "attempt to foster a relationship with another person or entity by creating an enemy in a coworker or other county agency," and that was not how relationships should be built in the fire service industry. Dkt. 112, at 5. Mr. Senter noted that Plaintiff gave contradictory answers in the interview and was unable to explain those contradictions. Dkt. 112, at 5. Mr. Senter had the impression that Plaintiff was not honest and that gave him concern. Dkt. 112, at 7. Mr. Senter felt Ms. Blackwood had better problem solving and interpersonal skills. Dkt. 112, at 6. In his view, she had sufficient technical skills. Dkt. 112, at 6-7. Plaintiff's military service did not negatively impact the scores Mr. Senter gave him. Dkt. 112, at 7. Mr. Senter, a veteran, states that he views military service as a "positive quality." Dkt. 112, at 7.

Mr. Dunaway notes that Plaintiff gave an incorrect explanation about the fire code and felt that he did not seem to have a "good grasp as to what the code requires versus what the code recommends." Dkt. 115, at 5. Mr. Dunaway felt that Plaintiff thought that he "could take on more authority than allowed by the code, without approval from the Fire Marshal." Dkt. 115, at 5. This was a "big concern" for Mr. Dunaway, particularly in light of the further impression Plaintiff gave that he was unwilling to learn. Dkt. 115, at 5. Mr. Dunaway states that the fact of Plaintiff's military service did not play into how he was scored. Dkt. 115, at 6. Mr. Dunaway maintains that "if he had described similar experience in a non-military setting, [Mr. Dunaway] would have given him the same score." Dkt. 115, at 6.

Plaintiff perceived the interview questions regarding his military service as "hostile and mocking," particularly those from Mr. Senter, who is also a veteran. Dkt. 98, at 5. Plaintiff stated during the interview that he worked for the county "on and off" due to his military service. Dkt. 98, at 6.

1    No one on the panel mentioned Plaintiff's military service in the post
     interview discussions. Dkts. 110, at 6; 111, at 7; 112, at 7; 115, at 6. Plaintiff had
2    a total score of 102.5 and Ms. Blackwood had a score of 124.0. *Id.* Based on the
     panel's scores, Ms. Blackwood was promoted [to DFM 2] effective May 1, 2013.
3    Dkt. 114, at 6. . . .
          Mr. Lynam typed up a summary of the interviewers' notes after the
4    interview for the DFM 2 position in order to discuss it with Plaintiff and help him
     perform better in future interviews. Dkt. 113. Tricia Bennon, a Kitsap County
5    employee that shares office space with the Fire Marshal's office, asserts that she
     found this summary on a credenza in the office. Dkt. 100, at 2. She told Plaintiff
6    about it and suggested that he retrieve it. Dkt. 100, at 2. Mr. Lynam does not
     remember placing the summary on the credenza outside his office, did not see it
7    there, and stated that if he did leave it there, it was inadvertent. Dkt. 113. The
     summary included bullet points which stated, in part, "[t]endency to tell others
8    including fire departments what he decided rather than using a collaborative
     environment;" "[o]verbearing, arrogant, 'jerk' in answers and body language.
9    Aware that he offends others but no process to keep it in check or modify
     behaviors;" "weak on intent and application of code where prescriptive sections
10   of the code are recommendations;" and "[s]exist response 'firemen' verse
     firefighters, infantrymen verses soldiers." Dkt. 100, at 7.
11        In May 2013, after the interview, Mr. Lynam asked Plaintiff to meet with him
     to discuss the interview. Dkt. 103, at 80. Plaintiff initially responded in an email
12   that he would rather not do so, but he eventually did. *Id.*

13   Dkt. 136, at 11-14.

14        In Washington, a "defamation action consists of four elements: 1) a false statement, 2)

15   publication, 3) fault, and 4) damages." *Duc Tran v. Le,* 177 Wash.2d 649, 662 (2013)(*internal*

16   *citation omitted*).

17        Plaintiff's motion should be denied, Defendants' motion granted, and Plaintiff's claim for

18   defamation dismissed. As to the first element, false statement, Plaintiff argues that "the

19   interview note labeled him a 'jerk' for using 'sexist' language." Dkt. 126. He asserts that Ms.

20   Bennon declares that he is not sexist. *Id.*

21        As a threshold matter, "[b]efore the truth or falsity of an alleged defamatory statement can be

22   assessed, a plaintiff must prove that the words constituted a statement of fact, not an opinion."

23   *Robel v. Roundup Corp.,* 148 Wash.2d 35, 55 (2002)(holding that calling a co-worker "bitch" an

24

1   opinion).  Expressions of opinion are not actionable.  *Id.*  In order to decide whether a statement

2   was actionable, there is a three part test:  "(1) the medium and context in which the statement

3   was published, (2) the audience to whom it was published, and (3) whether the statement implies

4   undisclosed facts."  *Dunlap v. Wayne,* 105 Wash.2d 529, 539 (1986).

5       Plaintiff has not shown that the alleged defamatory statements here are statements of fact, not

6   just opinion.  As to the "medium and context," Defendants explain that the terms complained of

7   were in Mr. Lynam's summary of the interviewers' notes and that the word 'jerk' came from the

8   Plaintiff's own description of himself during the interview.  Further, as to the portion of the

9   summary notes that Plaintiff used a "[s]exist response 'firemen' verse firefighters, infantrymen

10  verses soldiers," Plaintiff makes no showing that this statement is also one of fact, not just an

11  opinion.  Although Defendant argues that the "use of non-gender neutral terms could be

12  considered sexist" the use of equivocal language demonstrates the reverse as well, and that at its

13  core, whether the use of "'firemen' verses [sic] firefighters, infantrymen verses [sic] soldiers" is

14  sexist is a matter of opinion.

15      Further, in the circumstances, the "audience" (his co-worker Ms. Bennon, the woman to

16  whom the notes were inadvertently disclosed), is likely to know that calling him a "jerk" was an

17  opinion and that he made a "sexist response" was also an opinion.

18      Lastly, the statements do not imply "undisclosed facts."  Ms. Bennon was aware (as any

19  reader would be) of the reason that the summary says that Plaintiff gave a "sexist response" –

20  because of his use of non-gender neutral language.  "A simple expression of opinion based on

21  disclosed or assumed non-defamatory facts is not itself sufficient for an action of defamation –

22  no matter how unjustified or unreasonable the opinion may be or how derogatory it is."  *Dunlap,*

23

24

1   at 540 (adopting Restatement (Second) of Torts § 566)(*quoting* comment (c)).  Plaintiff has

2   failed to make a showing on this threshold question and his claim should be dismissed.

3   **D.  CONCLUSION**

4       Plaintiff's claims under the PRA and for defamation should be dismissed.  As stated in the

5   May 22, 2014 Order, Plaintiff's USERRA claim for § 4311 (discrimination), USERRA claim for

6   § 4316 (without cause discharge), and WLAD claim for discrimination, to the extent that the

7   claims were based on the failure to promote him and his removal from the fire investigation

8   rotation, remain for trial.

9                           **III.     ORDER**

10       It is **ORDERED** that:

11       • Plaintiff's Motion and Memorandum for Partial Summary Judgment Regarding

12           Public Records Act and Defamation (Dkt. 126) **IS DENIED**;

13       • Defendants' Cross Motion for Partial Summary Judgment Regarding Claims for

14           Public Records Act and Defamation (Dkt. 137) **IS GRANTED;** and

15       • Plaintiff's Public Records Act and defamation claims **ARE DISMISSED**.

16       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

17   to any party appearing *pro se* at said party's last known address.

18       Dated this 30th day of June, 2014.

19

20

21       ROBERT J. BRYAN
         United States District Judge

22

23

24