UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CRAIG D. HANSON, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF KITSAP, WASHINGTON, et. al., <br><br> Defendants. | CASE NO. 13-5388 RJB <br><br> ORDER ON PLAINTIFF'S MOTION FOR FEES, EXPENSES, AND OTHER AWARDS |

This matter comes before the Court on the Plaintiff's Fed. R. Civ. P. 54(d) Motion for Fees, Litigation Expenses, Offset to Adverse Tax Consequences, Prejudgment Interest and Liquidated Damages. Dkt. 283. The Court has considered the pleadings filed regarding the motion and the remaining file.

Plaintiff, a veteran of the U.S. military, filed this employment case pursuant to Uniformed Services Employment and Reemployment Rights Act ("USERRA") 38 U.S.C. § 4301, *et seq*. and state law. Dkt. 1. After his first trial ended in a hung jury, a second jury awarded him $64,656.00. Plaintiff now moves for over $964,235 in attorneys' fees (including a

1.5 multiplier), litigation expenses of $25,551.23, an award of $16,189.00 to offset adverse tax consequences, $1,943.03 in prejudgment interest, and liquidated damages of $54, 862.00.  Dkt. 283.  (Plaintiff's reply increases the attorneys' fee request to $1,093,509).  Dkt. 320.  For the reasons set forth below, the motion should be granted, in part, and denied, in part.

## I.      FACTS

The background facts of this case are found in the Court's several orders on summary judgment (Dkts. 37, at 1-9; 136, at 1-16; and 153, at 1-4) and are adopted here.

Plaintiff filed this case on May 22, 2013.  Dkt. 1.  That same day, he filed a motion for waiver of his filing fee pursuant to USERRA's provisions permitting veterans to file cases in U.S. District Court without paying court costs or fees, 38 U.S.C. § 4323(h).  Dkt. 3.  As a part of that motion, Plaintiff's counsel moved the court for waiver of the $226.00 admission fee to be admitted to practice in the U.S. District Court Western District of Washington, arguing that that fee should also be considered a "court fee."  *Id.*  Plaintiff's motion was granted as to the filing fee, but denied as to Plaintiff's counsel's bar fee.  Dkt. 9.  Plaintiff's counsel was informed that that fee is not a fee charged that counsel can charge to Plaintiff, but "part of the lawyer's cost of doing business."  Dkt. 9, at 2.

Plaintiff amended his Complaint on May 29, 2013.  Dkt. 11.  He filed a motion for protective order on June 6, 2013, seeking an order protecting him from having to participate in non-deposition interviews.  Dkt. 13.  That motion was denied on June 14, 2013, because Plaintiff failed to demonstrate good cause for a protective order.  Dkt. 21.

On August 30, 2013, Plaintiff filed a Motion for Partial Summary Judgment Regarding Liability on all of his USERRA claims under 38 U.S.C. §§ 4312, 4313 (reemployment), 4316

1  (benefits & without cause discharge), and 4318 (pension).  Dkt. 25.  Plaintiff's motion was

2  denied.  Dkt. 37.

3        Plaintiff's motion to file a Second Amended Complaint (Dkt. 38), was granted, in part,

4  and denied as futile as to his proposed claim for violation of his First Amendment rights.  Dkt.

5  44.  After several discovery disputes, Kitsap County filed a Motion to Compel a Rule 35

6  Examination of Plaintiff.  Dkt. 50.  That motion was granted and Plaintiff's motion to have

7  Kitsap County bear the cost of Plaintiff's travel expenses or compensate Plaintiff for his missed

8  day of work was denied.  Dkt. 65.

9        On March 20, 2014, Kitsap County moved for summary dismissal of Plaintiff's claims

10  for reemployment, failure to promote, and discrimination.  Dkt. 77.  It also filed a motion for

11  summary dismissal of Plaintiff's claims for hostile work environment, constructive discharge,

12  and retaliation.  Dkt. 90.  Plaintiff moved for summary judgment on his claims for

13  reemployment, failure to promote, and discrimination.  Dkt. 97.

14        On May 22, 2014, this court issued a 38 page order.  Dkt. 136.  Plaintiff's cross motion

15  for summary judgment was granted as to his USERRA §4318 pension claim (demonstrating that

16  he was entitled to a little over $2,000) and denied as to all his other claims.  Dkt. 136.  Plaintiff's

17  multiple claims for violations of USERRA's reemployment provisions under 38 U.S.C. §§ 4312

18  and 4313 were dismissed; his USERRA claim under § 4316 for benefits was dismissed; and all

19  but one of his § 4311 USERRA claims for discrimination related to the failure to promote him

20  and his removal from the fire investigation schedule were dismissed; his hostile work

21  environment claim was dismissed, and his constructive discharge claim was dismissed.  Dkt. 136.

22  The few remaining claims were his USERRA claim under § 4316 for without cause discharge,

23  and, to the extent they were only based on Defendant's failure to promote him and his removal

24

1  from the fire investigation rotation, his USERRA § 4311 and Washington Law Against
2  Discrimination claims. Dkt. 136.
3        On May 8, 2014, Plaintiff filed yet another motion for summary judgment, this time
4  regarding his Public Records Act ("PRA") and defamation claims. Dkt. 126. Defendants cross
5  moved to have those claims summarily dismissed. Dkt. 137. In an order setting noting dates for
6  these motions, the Court noted that "[m]otions practice in this relatively simple case has been
7  extensive. Parties have over-briefed many of the issues. The undersigned is familiar with the
8  entire record and does not need yet another rehashing of events. Be concise." Dkt. 142.
9        On June 30, 2014, Plaintiff's motion for summary judgment regarding his PRA and
10  defamation claims (Dkt. 137) was denied, Defendants' motion for summary judgment was
11  granted and Plaintiff's claims under the PRA and for defamation were dismissed. Dkt. 153.
12        The first trial began on August 12, 2014. Dkt. 179. Following a six-day trial, the jury
13  informed the court that it could not reach a unanimous verdict and a mistrial was declared. Dkt.
14  199. A new trial date was set.
15        On February 5, 2015, Plaintiff's motion for relief from the discovery deadline was
16  denied. Dkt. 231.
17        On March 2, 2015, the second jury trial began. Dkt. 253. The jury awarded Plaintiff
18  $1,602.00 in lost wages and benefits for before August 23, 2013; $25,829 for lost wages and
19  benefits from August 23, 2013 to March 2, 2015, and $37,225 in future wages and benefits for a
20  total of $64,656 and found that "the demotion, retaliation or discrimination of the defendant was
21  willful." Dkt. 274.

**PENDING MOTION**

In Plaintiff's instant motion and hundreds of pages of attachments and supplements, Plaintiff seeks at least $964,235 in attorneys' fees (including a 1.5 multiplier of the attorneys' fees), litigation expenses, an offset for tax consequences, prejudgment interest, and liquidated damages, and attorneys' fees for responding to post trial motions practice. Dkt. 283. Plaintiff's reply adds to the requested amount. Dkt. 320.

In its response, Defendant does not dispute that Plaintiff is entitled to reasonable attorneys' fees. Dkt. 316. Defendant argues that the amount requested in attorneys' fees is "grossly excessive," and urge a substantial reduction in the award. Dkt. 316. Defendant asserts that litigation expenses should be reduced. *Id*. Defendant further argues that the Court should decline to award prejudgment interest or an offset for tax consequences because Kitsap County is immune from awards of this nature. *Id*. It lastly argues that liquidated damages should not be awarded. *Id.*

## II.   DISCUSSION

The jury found for Plaintiff on one of his claims under USERRA and two of his claims under WLAD. USERRA provides:

> In any action or proceeding to enforce a provision of this chapter by a person under subsection (a)(2) who obtained private counsel for such action or proceeding, the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses.

38 U.S.C.A. § 4323(h)(2).

The Washington Law Against Discrimination has a similar, but mandatory, attorney's fee provision. RCW 9.60.030(2).

## A. ATTORNEYS' FEES

In determining what attorney's fee is reasonable in a particular case, the court arrives at the "lodestar amount," that is, multiplying the number of hours reasonably expended by a reasonable hourly rate. *Jordan v. Multnomah County*, 799 F.2d 1262, 1265 (9th Cir. 1986) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "While in most cases the lodestar figure is presumptively reasonable, in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526, F.2d 67, 69–70 (9th Cir.1975), that have not been subsumed in the lodestar calculation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (*internal and quotations citations omitted*).

Under *Kerr,* the court considers the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 (1976). These considerations are consistent with Washington Rules of Professional Conduct 1.5.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th Cir. 1995)." *Id.* The party opposing the fee application has a burden of rebuttal

that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *Id.*

### 1. Lodestar Amount

#### a. Hourly Rates

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County,* 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are usually used. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). In making its calculation, the Court should consider the experience, skill, and reputation of the attorneys requesting fees. *Schwarz v. Sec'y of Health & Human Serv.,* 73 F.3d 895, 906 (9th Cir. 1995). The Court is further allowed to rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. *Ingram v. Oroudjiam,* 647 F.3d 955, 928 (9th Cir. 2011).

The hourly rates requested by Plaintiff's attorneys are: $400 for Mr. Love and $350 for both Mr. Crotty and Mr. Jarrard. Dkt. 283.

Mr. Love, who has been in practice for over 20 years, claimed a rate of $400 per hour; that rate is reasonable for the community. Mr. Crotty and Mr. Jarrard have much less experience, but have supported the $350 hourly rate by substantial evidence. That rate is reasonable and should be used to calculate fees. The court notes that for all three of Plaintiff's lawyers, the requested rate is greater than their usual hourly rates in light of the contingent nature of the fees in this case, and the risk of no fees.

#### b. Hours Billed

1        In the Ninth Circuit, "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). A district court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)(*citing McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2008)).

       For work done before March 17, 2015, Plaintiff's lawyers seek an award for the following hours: Mr. Crotty – 881.6 hours, Mr. Jarrard – 376 hours, and Mr. Love – 478.5 hours. Dkt. 283. (Mr. Love joined Plaintiff's case after discovery had closed and the bulk of the motions practice was concluded – in May of 2014). Dkt. 283-1, at 7. In their reply, Plaintiff's lawyers ask for a total of 967.39 hours for Mr. Crotty, 446 hours for Mr. Jarrard and 521.2 hours for Mr. Love for work to date. Dkt. 320.

       Defendant argues that the hours claimed for work through March 17, 2015 should be reduced by 971.42 hours for vagueness/block billing, non-recoverable items, unnecessary items, excessive hours, and duplicative hours. Dkt. 316. Defendant argues that only 809 hours were reasonably expended on this case. *Id.*

       The number of hours requested in this case is unreasonable and should be reduced. In the court's opinion, it is unreasonable to expect the defense to pay for three lawyers for Plaintiff. The case was simply not that complex. The court is not critical of the choice to use three lawyers, but that choice was not reasonably necessary to a fair presentation of Plaintiff's case.

       "District courts possess the necessary discretion to adjust the amounts awarded to address excessive and unnecessary effort expended in a manner not justified by the case." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). Beginning when Mr. Jarrard requested to have

1  the Court waive his bar fee to be admitted to practice in the Western District of Washington

2  because his client was asserting USERRA claims, Plaintiff's lawyers have over-litigated this

3  case, sometimes filing questionable motions (although this improved greatly after Mr. Love

4  joined the case).  They certainly filed several unnecessary, duplicative motions, often rehashing

5  events.  For example, Plaintiff's Motion for Protective Order was denied because he failed to

6  show good (or any) cause for issuance of such an order. Dkt. 21.  His August 2013 Motion for

7  Summary Judgment on the issue of liability was denied.  Dkt. 37.  In that motion, he asserted that

8  Defendant violated USERRA's  reemployment provisions under 38 U.S.C. §§ 4312 and 4313

9  when it failed to reemploy him in a DFM 2 position, and failed to give him his prior radio call

10 sign, identification card, fire marshal badge, boots, vehicle, and investigative responsibilities.

11 Dkt. 25, at 15.  Later in the litigation, when Defendant moved to have these claims summarily

12 dismissed, Plaintiff moved again for summary judgment on those claims.  Dkt.97.  Plaintiff's

13 motion was again denied, Defendant's motion was granted, and the 38 U.S.C. §§ 4312 and 4313

14 claims were dismissed.  Dkt. 136.  Moreover, in a cross motion for summary judgment, Plaintiff

15 asserted eight different factual bases to support his claims that Defendant violated USERRA's

16 anti-discrimination provision in § 4311 and the Washington Law Against Discrimination

17 ("WLAD").  Dkt. 97 and 123.  All but two of these § 4311 and WLAD claims were dismissed.

18 Dkt. 136.  Plaintiff's multiple claims for hostile work environment and the claim for constructive

19 discharge were also dismissed on summary judgment.  Dkt. 136.  Plaintiff's motion for summary

20 judgment on his state law claims for violation of Washington's Public Records Act and for

21 defamation was denied, Defendant's motion to dismiss these claims was granted, and the claims

22 were dismissed.  Dkt. 153.  Aside from the USERRA § 4316 claim that the Defendant

23 miscalculated the amount, by a little over $2,000, that should have been paid into Plaintiff's

24

1 retirement fund, Plaintiff's multiple motions for summary judgment were denied. Almost all of
2 his claims were dismissed. Plaintiff only proceeded to trial on three of the several claims he
3 made. He was wholly unsuccessful in his first trial. Although he requested a jury award of at
4 least $400,000.00 at the second trial, Plaintiff received less than $65,000.00 (plus a finding of
5 willfulness).

6 Further, counsel's billing records, which are hundreds of pages, are vague (*e.g.* Mr. Love
7 billed 32 hours for "preparation for trial re review of trial testimony from first trial; review of
8 exhibits," and 47.6 hours for "preparation for trial re trial testimony of adverse witnesses and
9 exhibits and expert economists"). The records include non-recoverable hours, (*see e.g.* Mr.
10 Jarrard billed 5.17 hours on whether they could file a bar complaint against the defense attorneys
11 and Mr. Crotty billed for preparing press releases). The bills are excessive and unnecessary (*see*
12 *e.g.* 64 hours were billed preparing for two depositions; 11 hours opposing defendant's motion to
13 amend its answer to clarify a defense, 9 hours to prepare voir dire questionnaires), and are
14 extraordinarily duplicative.

15 Plaintiff argues that the amount of time Defendant's lawyers spent on the case shows that
16 the number of hours they request is reasonable. In the Ninth Circuit, "[a]lthough opposing
17 counsel's billing records may be relevant to determining whether the prevailing party spent a
18 reasonable number of hours on the case, those records are not dispositive." *Gonzalez v. City of*
19 *Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)(*citing Democratic Party of Wash. v. Reed*, 388
20 F.3d 1281, 1287 (9th Cir.2004)) Therefore, this "court has the discretion not to rely on them."
21 *Id.*

22 The number of hours Defendant's attorneys spent on the case is of scant relevance in
23 determining whether Plaintiff's fee request is reasonable. Defendant points out that as a
24

government entity, attorneys keep time records in a different manner and for different reasons than a private lawyer would. Dkt. 329. For example, they record time for county budgeting purposes and for time spent briefing various elected officials. Dkt. 329. Further, Plaintiff forced defendant's attorneys to respond to several unwarranted motions. By over-litigating the case, Plaintiff's lawyers forced Defendant's lawyers to spend far more time than was warranted on this case. Defendant's time records are of little relevance. Indeed, this court is of the opinion that three defense lawyers were not necessary here – although the court is not critical of the defense's decision to use three lawyers – but the defense is not asking for the Plaintiff to pay its attorney's fees.

Much argument is made about settlement negotiations, or lack thereof. Suffice it to say that both sides substantially misjudged the settlement value of the case and neither side did a good job in settlement negotiations. Events surrounding settlement do not militate against the lodestar amount here determined.

Counsel's billing after March 17, 2015 suffers from the same issues as above – it is duplicative and excessive.

For the foregoing reasons, the court finds that the compensable hours claimed by Plaintiff's counsel should be reduced by one-third across the board; that is, to 648 for Mr. Crotty, 299 for Mr. Jarrard, and 349 for Mr. Love.

The lodestar figure then is calculated as follows:

| | | | | |
|---|---|---|---|---|
| 648 hours | x | $350 | = | $226,800.00 |
| 299 hours | x | $350 | = | $104,650.00 |
| 349 hours | x | $400 | = | $139,600.00 |
| Attorney's Fees lodestar | | | | $471,050.00 |

1         *2. Kerr Factors*

2         After making the lodestar computation, the court must assess whether it is necessary to

3 adjust the presumptively reasonable lodestar figure on the factors announced in *Kerr*. *See Ballen*

4 *v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). "Only in rare circumstances should a

5 court adjust the lodestar figure, as this figure is the presumptively accurate measure of

6 reasonable fees." *Id.,* at 746.

7         Defendant argues that the adjusted hours should be reduced by 75% under the *Kerr*

8 factors. Dkt. 316. An appropriate adjustment in hours has been made in determining the

9 lodestar amount.

10        Plaintiff argues that a 1.5 multiplier of the requested fees under the *Kerr* factors should be

11 awarded considering "the contingent nature of success and quality of work performed." Dkt. 283

12 *(citing Chuong Van Pham v. City of Seattle*, 159 Wn.2d 527, 541 (2007))*. Plaintiff fails to show

13 that "the contingent nature of success and quality of work performed" support an increase in the

14 amount requested under the *Kerr* factors. Those considerations are adequately covered by the

15 hourly rates adopted by the court.

16            a.    <u>The Time and Labor Required</u>. The court has commented on the

17 time and labor required in determining reasonable hours.

18            b.    <u>Novelty and Difficulty of Questions</u>. The questions in the case

19 were not particularly difficult. While there have not been many USERRA cases litigated, the

20 law is not complex, and the verdict here was the result of the jury's interpretation of the

21 evidence. This was a relatively simple case that was over litigated. These factors do not favor a

22 reduction or addition to the lodestar amount.

        c.    <u>Requisite Skill and Preclusion of Other Employment</u>.  This case did not require exceptional skill to perform the legal service properly, and the lawyers did not show that it precluded other employment by these attorneys more than any other case would.  The skill required is recognized in the hourly rate allowed.

        d.    <u>Customary Fee, Whether the Fee is Fixed or Contingent, Time Limits</u>.  The customary fee in such civil rights cases is basically the lodestar amount.  Enhancements are not customary.  The contingent nature of the fees is considered in the hourly rates allowed.  There is no evidence that any unusual time limits were placed on counsel, either by the client or by the circumstances.

        e.    <u>Amount Involved and Results Obtained</u>.  While at first, the results obtained seem to indicate that the fee request and the lodestar amount are too high, the law counsels us, in civil rights-type cases, to consider vindication of the right involved as an important part of the result obtained.  Accordingly, counsel's fees that may seem far excessive when balanced against the amount obtained are not excessive when balanced against the rights vindicated.

On the other hand, the court does not see this case as the major accomplishment that Plaintiff's counsel urges.  The fact that there have not been a large number of USERRA cases tried does not boost this case to the landmark status urged by Plaintiff's counsel.

        f.    <u>Experience, Reputation and Ability of Attorneys, Undesirability of Case and Relationship with Client</u>.  The consideration of the experience, reputation and ability of these attorneys is addressed above in the lodestar and no further consideration is required.  The desirability or undesirability of the case does not provide a basis to increase or reduce fees here,

nor does the nature and length of the professional relationship with the client favor an enhancement or reduction of the lodestar.

        g.    <u>Awards in Similar Cases</u>.  No evidence has been submitted of awards of this nature in similar cases, except for the lodestar calculation in civil rights cases.

    *3.  Conclusion*

The *Kerr* factors and RPC 1.5 do not counsel for enhancement or reduction to the lodestar amount.  Accordingly, Plaintiff should be awarded attorneys' fees of $471,050.00, the lodestar amount.

    **B.  LITIGATION EXPENSES**

The parties do not dispute that WLAD and USERRA allow for recovery of reasonable litigation expenses.  There is no doubt that substantial litigation expenses were incurred.

Plaintiff requests a total award of $25,551.23 for litigation expenses.  Plaintiff submits three lawyers' separate requests for litigation expenses.  The necessity for all items is not shown, and the organization was difficult to follow.  When the court saw items like Ibuprofen, Listerine, Pepto Bismol and coffee listed, that triggered a closer examination of claimed expenses than is usually necessary. (The court does not doubt that counsel needed Ibuprofen, Pepto Bismol, and Listerine, but doubts that such items would normally be charged to a client.)

The question is not only whether counsel spent the money claimed in aid of the litigation, but also whether the amounts claimed are reasonably necessary and would normally be charged to a fee-paying client *based on the showing made*.

Under the showing made, the court should not allow part of the total litigation expenses claimed based on the following analysis:

On documents marked Docket Numbers 283 (¶ C), 283-1, and 289, Mr. Crotty requested litigation expenses totaling $19,301.40. Of those expenses, only two items should be disallowed.

The $1,000.00 request for "Westlaw Research Fee" should be disallowed because there is no showing tying that apparently rounded off expense to the necessities of this case, nor is there any showing of the basis of accounting for time used on Westlaw research.

The second item that should be disallowed is Mr. Normandeau's bill for $750.00 for post-trial work. None of that work proved to be reasonably necessary to the results obtained.

Of Mr. Crotty's claim, $17,551.40 should be allowed.

On the document marked Docket Number 283-2, Mr. Jarrard claims litigation expenses of $1,519.79, only broken down as Travel, $1,162.35, Assistant, $300.00, and Trial Supplies, $57.44. Dkt. 283-2 at p. 7. Mr. Jarrard offers to "submit supporting records to the court *in camera* at its request." The court does not so request. The time for supporting records was with the motion for litigation expenses. The showing for travel and trial supplies is not sufficient for the court to determine reasonable necessity, and they should be disallowed. Mr. Jarrard does submit his assistant's declaration of work done for this case (Dkt. 283-2, Ex. D at p 48-50). The $300.00 paid to Ms. York should be allowed as an expense of litigation.

In the documents marked as Docket Numbers 283-3 and 314, Mr. Love claims litigation expenses totaling $5,768.64. Those expenses are summarized on at Dkt. 283-3 at page 43 and Dkt. 314, and supporting documents are attached. Based on the contents of the supporting documents, the following items are not shown to be reasonably necessary to the litigation – nor are they the kind of charges "normally charged to a fee paying client:"

**Coffee**:   Dkt. 283-3, pages 58 and 62: $4.59 and $4.37; $3.30 and $6.19.

**Restaurant charges**: Dkt. 283-3, page 50, $114.03; page 59, $109.55, page 63, $78.85. Those charges are too high for one person's meal, and there is no showing of who else may have shared the meal.

**Thriftway grocery**. Dkt. 283-3, page 60, $71.99. Bill includes power or candy bars, Ibuprofen, Pepto Bismol and Listerine.

**Seattle gas and parking bills**. Page 66, $82.79; Page 69, $25.00. No justification of travel to Seattle is shown.

**Copy and printing charges**. Pages 43-45, $2,400.80. The necessity for such a high cost was not shown.

Those items total $2,900.96. The balance of $2,864.68 reflects appropriate litigation expense to be charged to defendants.

The total litigation expense to be awarded is, therefore, $17,551.40, plus $300, plus $2,864.68, for a total of $20,716.08.

### C. LIQUIDATED DAMAGES

If the court determines that an employer's failure to comply with USERRA was willful, "The court may require the employer to pay the person an amount equal to 'lost wages and benefits' as liquidated damages." 38 U.S.C. § 4323(d)(1)(B). This award is in addition to the initial award. 38 U.S.C. § 4323(d)(2)(A).

The jury found willfulness. Accordingly, Plaintiff's motion should be granted on this issue. He should be awarded an additional $27,431.00 in liquidated damages ($1,602.00 wages and benefits lost before August 23, 2013, plus $25,829.00 lost from August 23, 2013 to March 2, 2015).

ORDER ON PLAINTIFF'S MOTION FOR FEES,
EXPENSES, AND OTHER AWARDS- 16

### D. PREJUDGMENT INTEREST

USERRA provides that "[a] State shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section." 38 U.S.C. § 4323(d)(3). Plaintiff should be entitled to prejudgment interest on the lost wages and benefits to the time of trial ($27,431.00), but have failed to provide a credible calculation of the amount. Interest on lost wages and benefits can only be calculated from the due date of each wage or benefit lost. Mr. Normandeau's computation found in his declaration (Dkt. 283-4 at pages 9-11) is not credible, and prejudgment interest should not be awarded on the showing made.

(Defendants argue that they are protected by Eleventh Amendment immunity from award of prejudgment interest. Dkt. 316. Defendant has not shown that the Eleventh Amendment applies. Defendant is not a state. Moreover, USERRA specifically defines "private employers" as including "political subdivision[s] of a State." 38 U.S.C. § 4323(i).)

### E. AWARD TO OFFSET ADVERSE TAX CONSEQUENCES

Plaintiff moves for an award to offset adverse federal tax consequences under WLAD. Dkt. 283 (*citing Blaney v. International Association of Machinists and Aerospace Workers*, 151 Wash.2d 203 (2004)(holding that WLAD's "other equitable relief as the court deems appropriate" allows for offsets for additional federal income tax consequences)).

Plaintiff's motion for an additional award to offset adverse federal tax consequences should be denied. Plaintiff has not shown that this additional relief is appropriate. Plaintiff prevailed on only a portion of his state law claim. Further, there was no evidence offered in support of this claim during trial. To allow tax compensation now would be to deprive defendant of its right to a jury trial on this subject. The motion should be denied.

### III. ORDER

It is **ORDERED** that:

Plaintiff's Fed. R. Civ. P. 54(d) Motion for Fees, Litigation Expenses, Offset to Adverse Tax Consequences, Prejudgment Interest and Liquidated Damages (Dkt. 283) **IS GRANTED IN PART** and an Amended Judgment should issue, in favor of Plaintiff and against defendant, including the Original Judgment (damages in verdict), $64,656.00, plus $27,431.00 in liquidated damages, $471,050.00 in attorneys' fees, and $20,716.08 in litigation expenses.

The total Amended Judgment to be entered in favor of Plaintiff and against defendant is $583,853.08.

The motion is **DENIED** in all other respects.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 30th day of June, 2015.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge